UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEMETROIS T. DIXSON,

          Plaintiff,

   v.

BETHLEHEM ASHEME HAILE, et al.,

          Defendants.

No.  2:20-cv-00998-CKD P

ORDER AND

FINDINGS AND RECOMMENDATIONS

    Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief pursuant to 42 U.S.C. § 1983.  This action proceeds on plaintiff's complaint alleging that defendants Haile and Singson-Ganitano were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  See ECF No. 7 (screening order).  Currently pending before the court is defendants' motion for summary judgment.  ECF No. 40.  For the reasons explained in further detail below, the undersigned recommends granting defendants' motion.

    **I.**    **Defendants' Motion for Summary Judgment**

    In their motion for summary judgment, defendants Haile and Singson-Ganitano contend that the undisputed material facts demonstrate that they were not deliberately indifferent to plaintiff's medical needs.  ECF No. 40-1 at 7-10.  Furthermore, defendant Haile asserts that plaintiff's disagreement with his diagnosis and course of treatment does not establish an Eighth Amendment violation as a matter of law.  ECF No. 40-1 at 9-10.  Defendant Singson-Ganitano

1

1   contends that she provided plaintiff with appropriate medical treatment that was within the

2   standard of care.  ECF No. 40-1 at 10.  Defendants also contend that they are entitled to qualified

3   immunity because they acted reasonably in providing plaintiff with medical care.  Id. at 11-12.

4        In his opposition, plaintiff asserts that defendant Haile's deliberate indifference was based

5   on her failure to diagnose or issue any form of treatment recommendation for plaintiff's medical

6   problem after "knowing a need was eminent."  ECF No. 44 at 2.  With respect to defendant

7   Singson-Ganitano, plaintiff indicates that she only routinely took plaintiff's vital signs and failed

8   to give defendant Haile any information concerning plaintiff's bleeding problem.  ECF No. 44 at

9   10.  Plaintiff submits that the material facts are in dispute because defendants' declarations

10   indicate that they "never actually saw any blood coming from the lip of plaintiff in approximately

11   456 days…, even when the medical records and multiple witnesses identified blood or blood

12   clotting on his lip."  ECF No. 44 at 8.  Defendants "demonstrated disbelief of the situation and

13   denied, refused, and disregard[ed] adequate medical attention, to include a diagnosis of the

14   problem."  Id.  Plaintiff cites to Farmer v. Brennan, 511 U.S. at 825, 837 (1994), to support his

15   argument that "purposefully avoiding knowledge of a medical problem may also amount to

16   deliberate indifference."  Id. at 13.  Lastly, plaintiff submits that defendants are not entitled to

17   qualified immunity because they failed to act reasonably in providing adequate medical care to

18   plaintiff.

19        By way of reply, defendants point out that plaintiff's opposition only contained

20   "conclusory statements bereft of admissible evidence that repeat the allegations in his complaint,

21   [and] fail to sufficiently address any of [d]efendants' arguments and [qualified immunity]

22   defenses."  ECF No. 45 at 1.  Such conclusory statements do not create a genuine issue of

23   material dispute regarding plaintiff's medical treatment.  ECF No. 45 at 2-3.  Accordingly,

24   defendants' motion for summary judgment should be granted.  ECF No. 45 at 4.

25        Although plaintiff's request to file a sur-reply is denied, the court has read and considered

26   plaintiff's objections noted in the request which was docketed on July 15, 2022.  See ECF No. 46.

27   /////

28   /////

1       **II.     Legal Standards**

2                **A.  Summary Judgment Standards**

3       Summary judgment is appropriate when it is demonstrated that there "is no genuine

4       dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

5       Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by

6       "citing to particular parts of materials in the record, including depositions, documents,

7       electronically stored information, affidavits or declarations, stipulations (including those made for

8       purposes of the motion only), admissions, interrogatory answers, or other materials…."  Fed. R.

9       Civ. P. 56(c)(1)(A).

10              Summary judgment should be entered, after adequate time for discovery and upon motion,

11      against a party who fails to make a showing sufficient to establish the existence of an element

12      essential to that party's case, and on which that party will bear the burden of proof at trial.  See

13      Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an

14      essential element of the nonmoving party's case necessarily renders all other facts immaterial."

15      Id.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party

16      to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

17      Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

18      existence of this factual dispute, the opposing party may not rely upon the allegations or denials

19      of their pleadings but is required to tender evidence of specific facts in the form of affidavits,

20      and/or admissible discovery material, in support of its contention that the dispute exists or show

21      that the materials cited by the movant do not establish the absence of a genuine dispute.  See Fed.

22      R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

23      fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

24      governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

25      Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

26      genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

27      party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  In the

28      endeavor to establish the existence of a factual dispute, the opposing party need not establish a

3

material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## B. Deliberate Indifference

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs. Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439 F.3d at 1096, citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of

4

pain.'" Id., citing Estelle, 429 U.S. at 104. "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez, 203 F. 3d at 1131-1132, citing McGuckin, 974 F.2d at 1059-60.

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Id. at 839. A showing of merely negligent medical care is not enough to establish a constitutional violation. Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106. A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Furthermore, mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case." Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060.

### III.    Allegations in the Complaint[1]

At all times relevant to the allegations in the complaint, plaintiff was an inmate at the

[1] A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence. Lopez v. Smith, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000).

1   California Medical Facility ("CMF").  The complaint alleges that plaintiff experienced recurring

2   episodes of profuse bleeding from his lips.  Beginning in February 2019, plaintiff was examined

3   by defendant Haile, his primary care physician, for these recurrent episodes.  ECF No. 1 at 12.

4   Defendant Haile "indicated that plaintiff was lying about his condition or hallucinating his

5   symptom of bleeding" and refused to provide him any further medical treatment or diagnosis of

6   this problem.  ECF No. 1 at 12.  Plaintiff had to call "man down" several times beginning in

7   August 2019 because he was bleeding so badly from his lip.  Due to this denial of medical

8   treatment, plaintiff experienced pain and suffering, increased anxiety, and loss of feeling in his

9   lip. Id. at 15.

10      Defendant Singson-Ganitano, a registered nurse, reviewed every medical request form

11   that plaintiff submitted for his bleeding lips and was responsible for referring any problem to

12   defendant Haile.  Id. at 15-16.  Defendant Singson-Ganitano improperly diagnosed plaintiff's

13   condition and consistently advised him that his lips were just chapped and that he needed to drink

14   more water although she did provide gauze for plaintiff's lip.  Id.

15      Plaintiff's lip condition was finally diagnosed as arterio-venous malformation ("AVM")

16   by two different doctors at the CMF.  ECF No. 1 at 13.  In order to correct this problem, plaintiff

17   received surgery.  ECF No. 1 at 13.

18      Plaintiff attached several CDCR 22 forms to his complaint that were signed by different

19   correctional officers who observed plaintiff's lip bleeding.  Correctional Officer Miller indicated

20   on October 4, 2019 that he observed plaintiff's "severe" lip bleeding which was not caused by

21   fighting.  ECF No. 1 at 32, 44.  He observed this same problem on a second occasion as well.

22   ECF No. 1 at 65.  According to Officer Miller, the blood had saturated several towels.  ECF No. 1

23   at 32, 65.  On both occasions, Officer Miller indicated that he had to call medical staff to

24   plaintiff's unit to transport him on a gurney because plaintiff could not stop the bleeding.  ECF

25   No. 1 at 65.  Correctional Officer Beutler observed plaintiff's significant lip bleeding "numerous

26   times" over the course of the two months prior to October 7, 2019.  ECF No. 1 at 37.  Officer

27   Beutler indicated that "[s]ometimes up to two towels were needed to stop the bleeding."  Id.

28   Officer Duncan observed plaintiff's lip bleeding on October 15, 2019.  ECF No. 1 at 46.

1          **IV.     Undisputed Material Facts[2]**

2          During the events at issue in the present action, defendant Haile was employed by CDCR

3   as a physician at the CMF and was plaintiff's primary care physician beginning on July 30, 2018.

4   Defendants' Statement of Undisputed Facts ("DSUF") No. 3.  Defendant Singson-Ganitano was

5   employed by CDCR as a registered nurse at the CMF.  DSUF No. 4.  Plaintiff has no medical

6   training or background.  DSUF No. 2.

7          Following his recent transfer to the CMF, plaintiff was seen for the first time by defendant

8   Haile on July 30, 2018 for his initial medical evaluation.  DSUF No. 5.  During this medical visit,

9   plaintiff described his medical history and the treatments he received at the prior prison which

10  included asthma and chronic neck and lower back pain.  DSUF No. 5.  According to defendant

11  Haile, plaintiff never mentioned suffering from any medical condition related to his lips,

12  including any recurrent bleeding.  DSUF No. 5.  Plaintiff disputes this and talked to defendant

13  Haile about his lip bleeding during his initial appointment.  ECF No. 40-4 at 11 (Plaintiff's

14  Deposition).  Defendant Haile did not see anything of obvious concern related to plaintiff's lips

15  and she did not diagnose him as having chapped lips nor recommend that he use chapstick and

16  drink more water for any such lip condition.  DSUF No. 5.

17         On August 21, 2019, plaintiff submitted a CDCR Form 7362, known as a sick call slip,

18  requesting medical attention after he experienced continuous bleeding from his lower lip that

19  "soaked up a washcloth."  DSUF No. 6, ECF No. 40-6 at 6 (Assessment Forms).  On the sick call

20  slip, plaintiff indicated that he believed his lower lip needed to be cauterized because of the

21  amount of bleeding from his lip.  DSUF No. 6.  Plaintiff was seen by defendant Singson-Ganitano

22  on August 22, 2019 regarding his medical request.  Id.  During the physical examination of

23  plaintiff, defendant Singson-Ganitano noted that there was no active bleeding from his lip, but

24  there was dried clotted blood on his lower left lip.  DSUF No. 6, ECF No. 40-6 at 6.  Defendant

25  Singson-Ganitano checked plaintiff's vital signs and weight which were all normal.  Id.

26  Consistent with standard nursing practice, defendant Singson-Ganitano noted her medical

27

28  [2] All facts are undisputed by the parties unless otherwise noted.

1  findings and scheduled plaintiff for a non-emergency follow-up appointment with his Primary

2  Care Provider ("PCP"), Dr. Haile.  DSUF No. 6.

3        On August 23, 2019, plaintiff requested emergency medical treatment by going "man-

4  down" in his housing unit.  DSUF No. 7.  He was brought to the CMF Triage and Treatment Area

5  ("TTA"), which is akin to an emergency room located inside the prison.  DSUF No. 7, ECF NO.

6  40-5 at 2 (Declaration of B. Haile).  Plaintiff was seen by Dr. Dhillon, who was the doctor on-

7  duty in the TTA.  Id.  Plaintiff complained about continuous bleeding from his lower lip the day

8  before as well as that morning.  DSUF No. 7, ECF No. 40-5 at 13 ("Progress Notes").  He also

9  was experiencing breathing issues.  DSUF No. 7.  Based on Dr. Dhillon's physical assessment,

10  there was no active bleeding from plaintiff's lip, but there was dried clotted blood on his lower

11  left lip.  DSUF No. 7, ECF 40-5 at 13.  He also observed a small scratch in the middle of

12  plaintiff's lip with a rounded and soft, smooth bluish spot above the scratch area with a slight

13  surrounding excoriation.  DSUF No. 7.  Dr. Dhillon checked plaintiff's vital signs and

14  electrocardiogram ("EKG") results noting that his vital signs were stable and his EKG results

15  were normal and unchanged from prior EKGs.  DSUF No. 7.  It was not clear to Dr. Dhillon

16  whether plaintiff had herpes lesions, an AV malformation, or a deep scratch that caused the

17  bleeding.  DSUF No. 7.  Dr. Dhillon performed a lesion cauterization on plaintiff's lower lip

18  using a silver nitrate stick.  Id.

19        On August 25, 2019, plaintiff again requested to go man-down due to bleeding from his

20  bottom lip and shortness of breath.  DSUF No. 8, ECF No. 40-5 at 19 ("Progress Notes").

21  Plaintiff was transported to the TTA and was seen by the on-duty nurse who is not a party to this

22  action.  DSUF No. 8, ECF No. 40-5 at 19.  The nurse physically examined plaintiff and noted that

23  there was no active bleeding from his lip but there was a "blackish colored scab with mild

24  swelling."  Id.  Nursing protocol for plaintiff's shortness of breath was followed and plaintiff

25  indicated that he was feeling "much better" and was returned to his cell.  ECF No. 40-5 at 19.

26        On August 28, 2019, plaintiff had a follow-up appointment with his PCP.  DSUF No. 9.

27  Plaintiff was seen by Dr. Mathis who was covering the medical appointments for defendant Haile

28  that day.  DSUF No. 9.  Plaintiff stated that the silver nitrate procedure he received on August 23,

2019 was not helpful.  Id.  Upon physical examination, Dr. Mathis noted no active bleeding from plaintiff's lip, but there was an "8 mm scab overlying [a] left lower lip lesion."  DSUF No. 9, ECF No. 40-5 at 23 ("Progress Notes").  Dr. Mathis concluded that plaintiff's condition was caused by an AV malformation and recommended that a wedge resection procedure be performed to treat plaintiff's bleeding lip.  DSUF No. 9.  The doctor scheduled the procedure at the CMF procedure clinic.  DSUF No. 9.

On October 5, 2019, plaintiff had trouble sleeping and woke up with blood on his pillow, shirt, and lower face.  DSUF No. 10.  He requested medical attention for this condition by submitting a sick-call slip on October 6, 2019.  DSUF No. 10.  Plaintiff was seen the next day, October 7, 2019, by defendant Singson-Ganitano at CMF's Ambulatory Care Clinic for his complaint about a bleeding lower lip.  Id.  Defendant Singson-Ganitano physically examined plaintiff and noted that there was no open wound nor active bleeding on his lip and he was not experiencing any pain in his lip.  Id.  Plaintiff's vital signs were stable and his weight was within normal range.  Id.  After reviewing plaintiff's medical records, she confirmed that plaintiff had an appointment in the procedure clinic for his lip that had a compliance date of November 28, 2019.  Id.  Defendant Singson-Ganitano scheduled a follow-up appointment for plaintiff to see his PCP, Dr. Haile, on October 28, 2019, which was consistent with nursing protocols.  Id.

On October 10, 2019 plaintiff submitted a sick-call slip after waking up and finding blood on his face and pillow.  DSUF No. 11.  He was seen by defendant Singson-Ganitano at the Ambulatory Care Clinic on October 11, 2019.  DSUF No. 11.  Upon examining plaintiff, defendant Singson-Ganitano noted that there was no open wound nor active bleeding on his lip.  Id.  Plaintiff's vital signs were stable and his weight was within normal range.  Id.  After consulting with plaintiff's PCP, Dr. Haile, defendant Singson-Ganitano provided plaintiff with additional gauze and instructed him to apply direct pressure to his lip if it bleeds again.  Id.  She also confirmed that plaintiff still had an appointment in the procedure clinic to be completed by November 28, 2019.  Id.

On October 16, 2019, plaintiff submitted a sick-call slip stating that his lip was bleeding, his energy level was low, his heartbeat was irregular, and he was having headaches.  DSUF No.

9

12.  He was examined in the Ambulatory Care Clinic by defendant Singson-Ganitano on October 17, 2019.  DSUF No. 12.  When plaintiff arrived, he stated that he no longer had low energy, an irregular heartbeat, or a headache.  Id.  Upon physical examination of plaintiff, defendant Singson-Ganitano noted that there was no active bleeding on his lip, his vital signs were stable, his heart had a regular rate and rhythm, and his lung function was normal.  Id.

On October 28, 2019, defendant Haile met with plaintiff for a follow-up appointment regarding his previous sick call requests for a bleeding lip.  DSUF No. 13.  Plaintiff stated that he experiences headaches, an irregular heartbeat, and fatigue when his lower lip bleeds.  DSUF No. 13.  Defendant Haile physically examined plaintiff and determined that he had no buccal or facial lesions, he was not experiencing pain, and his lip was not bleeding at that time.  Id.  Plaintiff's vital signs were stable, and he denied having a cough, shortness of breath, palpitations, leg swelling, nausea, abdominal pain, diarrhea, melena, hematochezia, hematemesis, weight loss, poor appetite, urinary issues, weakness of extremities, or headaches.  Id.  According to his medical chart, however, plaintiff had been previously diagnosed by Dr. Mathis as having an AV malformation and was scheduled for a wedge resection procedure.  Id.  Defendant Haile concurred with Dr. Mathis' assessment and confirmed with plaintiff that the procedure was still scheduled at the CMF procedure clinic.  Id.

On November 7, 2019, plaintiff was seen in the procedure clinic by Dr. Mathis for his scheduled wedge resection for the AVM on his lip.  DSUF No. 14.  Plaintiff reported concerns about scarring resulting from the procedure so he indicated that he wanted a less invasive form of treatment.  DSUF No. 14.  Dr. Mathis determined that the procedure clinic did not have the appropriate medical equipment to provide plaintiff with an alternative treatment on site.  Id.  As a result, Dr. Mathis decided to consult with the medical administration concerning alternative procedures that were available at outside medical facilities.  Id.  The doctor scheduled a follow-up appointment with plaintiff on December 5, 2019.  Id.

At the December 5, 2019 appointment, Dr. Mathis informed plaintiff about the alternative medical treatments for his bleeding lip condition.  DSUF No. 15.  Dr. Mathis recommended laser ablation surgery to address plaintiff's concerns about scarring.  DSUF No. 15.

10

He advised plaintiff that Dr. Luque at the San Francisco Oral and Maxillofacial Surgery Clinic had agreed to schedule a consultation with plaintiff to discuss this surgical option.  Id.  Plaintiff reported being pleased with that option and agreed to have the surgery done.  Id.  The surgery was scheduled for January 28, 2020.  Id.

On December 9, 2019, plaintiff submitted a sick call slip requesting additional gauze to treat his bleeding lip.  DSUF No. 16.  Plaintiff was seen by defendant Singson-Ganitano on December 10, 2019.  DSUF No. 16.  She physically examined plaintiff and noted that his lip was not bleeding at the time.  Id.  Plaintiff's vital signs and weight were normal.  Id.  Defendant Singson-Ganitano provided plaintiff with additional medical gauze pads and advised him to apply direct pressure to his lip to stop any bleeding that occurred.  Id.

On January 28, 2020, plaintiff had the laser ablation surgery on his lip at the San Francisco Oral and Maxillofacial Surgery Clinic.  DSUF No. 17.

The next day, January 29, 2020, plaintiff had a post-surgery appointment with defendant Haile who noted that there was no evidence of any complications from the surgery.  DSUF No. 18.  The doctor further noted that plaintiff's sutures were intact, his respiration was even and unlabored, his vital signs were stable, and his lip was not bleeding.  DSUF No. 18.

On February 3, 2020, plaintiff had a second follow-up appointment after his lip surgery with defendant Haile.  DSUF No. 19.  Upon examination, she noted that there was no redness or discharge at or near the surgical site and it was healing normally.  DSUF No. 19.

On February 25, 2020, plaintiff was seen for his last post-surgical appointment with defendant Haile who noted that plaintiff's lip was healing well and there was no observable bleeding.  DSUF No. 20; Declaration of B. Haile at No. 13.  Plaintiff stated that he was taking his medications regularly and denied having any side effects.  DSUF No. 20.

Plaintiff admits that he "filed numerous sick call requests," for his lip condition and "[o]n every instance," defendant Singson-Ganitano physically "examin[ed] or attended to [p]laintiff." DSUF No. 23.

**V.      Analysis**

The undersigned finds that defendants have met their initial burden of informing the court

11

1   of the basis for their motion, and identifying those portions of the record which they believe

2   demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to

3   plaintiff to establish the existence of a genuine issue of material fact with respect to his deliberate

4   indifference claims.  See Matsushita Elec. Indus., 475 U.S. at 586 (1986).  The court has reviewed

5   plaintiff's verified complaint and his opposition to defendants' pending motion.

6          In this case, there is no genuine dispute that plaintiff suffered from a serious medical need

7   based on his recurring episodes of lip bleeding.  The only remaining question is whether

8   defendants' response to this serious medical need was deliberately indifferent.  See Jett, 439 F.3d

9   at 1096.  While plaintiff faults defendant Haile for not diagnosing his lip condition sooner, the

10  undisputed evidence indicates that defendant Haile had been plaintiff's PCP for over a year

11  before plaintiff submitted any sick call slip for his bleeding lips.  Plaintiff was first diagnosed as

12  having an AV malformation on August 28, 2019, five days after submitting this first sick call slip

13  for this medical problem.  There is no evidence submitted by either party that defendant Haile

14  was involved in providing plaintiff's medical treatment between August 21, 2019 and August 28,

15  2019.  Plaintiff was seen by defendant Singson-Ganitano, Dr. Dhillon, and Dr. Mathis during this

16  time period.  Therefore, any failure to diagnose plaintiff's condition would not be connected to

17  any action or inaction by defendant Haile.  The next medical appointment that plaintiff had with

18  defendant Haile was on October 28, 2019, a total of 10 days before plaintiff's scheduled wedge

19  resection procedure on his lip.  Other than confirming the scheduled procedure for plaintiff's lip

20  condition had already been ordered, there is no additional action or treatment that plaintiff

21  indicates should have been performed by defendant Haile on this occasion.  So, this case does not

22  even rise to the level of a difference of opinion about the proper course of treatment.  The

23  undisputed medical evidence establishes that the additional delay in treating plaintiff's lip

24  condition between November 7, 2019 and January 28, 2020 was based on plaintiff's election to

25  forego a wedge resection procedure in favor of a laser ablation surgery performed by an outside

26  medical provider.  Drawing all reasonable inferences from the evidence submitted in plaintiff's

27  favor, the court concludes that there is no genuine issue of material fact with respect to his claim

28  that defendant Haile was deliberately indifferent to his serious medical needs in violation of the

1    Eighth Amendment.  Defendant Haile is therefore entitled to summary judgment.

2          With respect to defendant Singson-Ganitano, even plaintiff admits that she responded to

3    each of his sick call requests based on his bleeding lip.  In this case, there is no evidence of a

4    failure to treat plaintiff's condition by this defendant.  Therefore, the only issue is whether

5    defendant Singson-Ganitano's actions constituted deliberate indifference.  The undisputed

6    medical evidence demonstrates that defendant Singson-Ganitano physically examined plaintiff on

7    each visit, provided him with gauze to use, and referred him to his PCP for further evaluation for

8    his lip condition.  The undisputed medical evidence demonstrates that this was within the

9    standard of medical care for nurses.  Plaintiff has not provided any evidence demonstrating that

10   this defendant's decisions were medically unacceptable under the circumstances.  Absent such

11   expert evidence, there is no material issue in genuine dispute to survive summary judgment.

12   Therefore, the undersigned concludes that defendant Singon-Ganitano is also entitled to summary

13   judgment.

14         Defendants' motion for summary judgment also contends that they are entitled to

15   qualified immunity.  Applying the two-step analysis of <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001),

16   <u>as receded from</u> by <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009), the court concludes that even taken

17   in the light most favorable to the plaintiff, the defendants' conduct did not violate the Eighth

18   Amendment for the reasons explained above.  Accordingly, the undersigned recommends

19   granting defendant's summary judgment on the additional grounds of qualified immunity.

20         **VI.    Plain Language Summary for Pro Se Party**

21         Because you are acting as your own attorney in this case, the court wants to make sure

22   that you understand this order. The following information is meant to explain this order in plain

23   English and is not intended as legal advice.

24         The court has reviewed the pending motion for summary judgment, as well as the

25   evidence submitted by the parties, and has concluded that the facts of your case are not

26   sufficiently in dispute to warrant a trial.

27         You have fourteen days to explain to the court why this is not the correct outcome in your

28   case.  If you choose to do this you should label your explanation as "Objections to Magistrate

13

Judge's Findings and Recommendations."  The district court judge assigned to your case will review any objections that are filed and will make a final decision on the motion for summary judgment.

Accordingly, IT IS HEREBY ORDERED that:

1.  The Clerk of Court randomly assign this matter to a district court judge.

2.  Plaintiff's request to file a sur-reply (ECF No. 46) is denied.

IT IS FURTHER RECOMMENDED that:

1. Defendants' motion for summary judgment ( ECF No. 40) be granted;

2. Judgment be entered in defendants' favor; and,

3. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 25, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/dixs0998.msj.CJRA.docx